IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| J.H. and S.H.,<br><br>　　Plaintiffs,<br><br>v.<br><br>UNITED BEHAVIORAL HEALTH and UNITEDHEALTHCARE INSURANCE COMPANY OF THE RIVER VALLEY UNITEDHEALTHCARE HERITAGE PLUS PLAN,<br><br>　　Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:23-cv-00190-JNP-CMR<br><br>District Judge Jill N. Parrish |

　　In this action, the parents of a child suffering from various mental-health and substance-use disorders seek an award of benefits from their insurance company for the services their child received in a residential treatment facility during part of 2020 and part of 2021. The parents' insurance plan prescribes two levels of internal appeals, which the parents have completed. Dissatisfied with the insurer's coverage decisions and frustrated with the lack of explanation for those decisions, the parents urge the court to conclude that their insurer's review of their claims was arbitrary and capricious. As remedy, they propose awarding benefits outright for the claims from 2020 and remanding the claims from 2021. The insurer, unsurprisingly, urges the court to hold that it reasonably evaluated the claims and to let its decisions stand.

　　The court is largely persuaded by the parents' arguments, though it disagrees with them in part on the appropriate remedy. For the reasons below, the court GRANTS the parents' motion for summary judgment as to the 2020 claims, DENIES the insurer's motion for summary judgment as

to those claims, and remands the claims to the insurer. That way, the insurer will have another opportunity to properly consider the parents' claims and provide them a full explanation of its decision. The court also GRANTS the parents' motion and DENIES the insurer's motion as to the 2021 claims and orders a remand to allow the parents an opportunity to submit supporting documentation for those claims.

## BACKGROUND

Plaintiff S.H., who was diagnosed with ADHD and several learning disorders at a young age, developed mental-health and substance-use disorders while she was in middle school. At fourteen, she started cutting herself multiple times a day, and she would engage in high-risk sexual and drug-related activities. Eventually, she was also diagnosed with major depressive disorder and moderate cannabis-use disorder. To stabilize and treat her, her parents placed her at Eva Carlston Academy, a licensed residential treatment facility in Salt Lake County, Utah, where she received care from March 20, 2020, to March 4, 2021, in the form of individual and group dialectical behavioral therapy, cognitive therapy, periodic medication evaluations, family therapy, and EMDR (Eye Movement Desensitization and Reprocessing) therapy.

S.H.'s father, Plaintiff J.H., was a participant in an employee welfare benefits plan insured and administered by Defendants (referred to collectively as United), and S.H. was a Plan beneficiary. As relevant to this case, the Plan incorporated three policy documents: a policy for Complementary and Alternative Medicine (CAM) treatments ("CAM Policy"), a policy listing the documentation requirements for reimbursement of therapy services ("Therapy Policy"), and a policy governing reimbursement of facility-based behavioral-health programs ("Facility Policy"). The CAM Policy essentially precluded coverage for "unproven" non-mainstream health services, such as art therapy. ECF No. 31-1, at 143–45. The Therapy Policy, which applied to "services

billed on [United's] UB-04 claim form," required claims to be accompanied by certain supporting documentation, such as "[s]tart and stop times or total time of session for time based codes" and "[p]atient[']s progress." *Id.* at 161–63. Finally, the Facility Policy, which also applied to "services reported using the UB-04 Claim Form," explained that United would "pay[ for] facility-based behavioral health services on a per diem basis" based on the "expected daily cost of [those services]." *Id.* at 165. It proceeded to specify that because United would pay for these services on a per-diem basis, "services . . . considered an integral part of the program services" would not be "separately eligible for reimbursement." *Id.* at 166. The terms of J.H.'s Plan gave United "discretionary authority" to "[i]nterpret [b]enefits and the other [Plan] terms." ECF No. 31-5, at 9.

S.H.'s parents submitted reimbursement claims to United for the services their daughter received at Eva Carlston, which billed the services to United using the UB-04 claims form.[1] United initially paid some but not all of the claims; specifically, United authorized payment for 97 days over those seven months.[2] In response, S.H.'s parents submitted a level one internal appeal on February 4, 2021. Their appeal letter attached S.H.'s medical records up through the end of 2020 and asked United to conduct a "full, fair, and thorough review," provide "specific reasons for the adverse determination including any specific plan provisions, medical criteria, and other documents utilized in making [the adverse] determination," and notify the parents "of any additional material or information necessary for [them] to perfect [their] claim along with an explanation of why such information [wa]s necessary." ECF No. 31-1, at 304. The letter made

---

[1] Plaintiffs were covered under a different insurance plan from March 20, 2020, through May 31, 2020, so claims for services provided during that time frame are not at issue in this case.

[2] To provide an idea of how much money was at stake, the services provided from June 1, 2020, through December 31, 2020, were valued at about $77,000. ECF No. 31-1, at 304.

several other requests, such as asking United to "provide [the parents] with the names, qualifications, and healthcare claim denial rates of all individuals who reviewed th[e] claim or with whom [United] consulted about th[e] claim." *Id.*

United conducted a level one appeal review and issued a response letter on March 11, 2021. According to the cursory two-page letter, benefit coverage was partially available for the period from June 1, 2020, to December 31, 2020. For the remaining dates at issue, though, United upheld denial:

> Revenue Code 1001 on 06/04/2020 through 11/30/2020 . . . = Decision Upheld - Service Not Rendered as billed. The submitted documentation is not sufficient to support the level of service(s) billed. Provider submitted the "Women issue, Substance Abuse, Health Coping Skill, Body Image" for these dates of service; therefore, service cannot be truly verified.
>
> Revenue Code 1001 on 06/03/2020 through 12/10/2020 . . . = Decision Upheld - Documentation does not support service billed. The medical documentation failed to include the required elements when providing therapy services per the Therapy Services Documentation Requirements Reimbursement Policy. The following was not documented:
> o   Therapy Intervention Techniques
> o   Patients progress, response to treatment
>
> Revenue Code 1001 on 06/01/2020 through 12/31/2020 . . . Decision Upheld - Documentation does not support the service billed. Though documentation was received, it did not include medical records for these date(s) of service.
>
> Revenue Code 1001 on 06/01/2020 through 12/31/2020 . . . = Decision Upheld - The billed service is considered a non-covered service per the COMPLEMENTARY AND ALTERNATIVE MEDICINE (CAM) TREATMENTS FOR BEHAVIORAL AND SUBSTANCE USE DISORDERS.

ECF No. 31-2, at 16. The letter then summarized the results of the level one appeal in an internally contradictory sentence:

> The purpose of this letter is to inform you that, based on my review of the available information I have determined that coverage is available under your benefit plan for your admission to Eva Carlston Academy for dates of service 06/01/2020

>through 12/31/2020 and that coverage is not available for 06/02/2020 through 12/30/2020.

*Id.* The letter also contained a paragraph explaining that "authorization [for S.H.'s care] was neither sought nor obtained . . . as required by the . . . Individual Provider Participation Agreement" applicable to network providers. *Id.*

The following year, the parents submitted a level two appeal on May 9. Their letter had no attached medical records detailing what services were provided on which days but pointed out numerous deficiencies in United's first appeal-decision letter, such as its "fail[ure] to provide [them] with any information regarding which of the [listed] denial reasons applied to each specific date of service." ECF No. 31-1, at 65. Indeed, nowhere in United's communications to the parents did the insurer specify "which specific [97] dates of service had been authorized." *Id.* Only after the parents called the insurer through their healthcare advocate did they learn that "the authorized dates were scattered seemingly randomly throughout th[e] entire date range." *Id.*

The parents' level two appeal letter also explained their view that the CAM Policy and Therapy Policy, which according to United's first appeal-decision letter were applied to evaluate their claims, governed only claims for outpatient care, not residential care, and that the Facility Policy should have been applied to their claims instead. *Id.* at 65–66. Further, the parents' letter expressed their concern that United engaged in a type of prohibited unbundling (splitting claims into arbitrary portions for denial) when evaluating their claims. *Id.* at 66–67. If United had indeed done so, then in the parents' view it may have violated the Mental Health Parity and Addiction Equity Act of 2008 ("Parity Act"). So, they requested that United "conduct a parity analysis to determine whether or not [their] plan [wa]s being administered in compliance with the [Parity

Act]" and that it "provide [them] with the results of th[at] analysis as well as a copy of any and all documentation used." *Id.* at 67.

Fourth, the parents' letter observed that the paragraph about the failure to obtain prior authorization in the first appeal-decision letter assumed that Eva Carlston was an in-network provider when in fact it had never been part of United's network. Thus, they argued that United had failed to provide them a full and fair review. Finally, they asserted that United's first letter did not specify what additional evidence they should submit to perfect their claims.

United responded in a decision letter a few weeks later on June 10, 2022. It briefly listed the materials used in its level two appeal and then specified the seven dates for which the earlier denial was overturned and the many dates for which the denial was upheld. Regarding the dates in 2020 as to which denial was upheld, the decision letter stated that the records failed to document "[s]tart and stop times or total time of session for time-based codes." ECF No. 31-2, at 291. For the remaining dates as to which denial was upheld, those in 2021, the letter observed that the parents and provider "failed to submit the requested medical records." *Id.* (Curiously, even though the parents had at no point submitted medical records detailing services provided for January 1 through March 4, 2021, United overturned its denials as to March 1, 2, and 4, explaining that "[t]he Documentation support[ed] the service billed." *Id.*) The letter continued, "[The] CAM policy does not allow for Art Therapy as a proven therapy modality. Several dates of service included Art Therapy." *Id.* Finally, it observed that "authorization was not obtained" for the services provided in 2021 and notified the parents that "[a]ll internal appeals through [United] ha[d] been exhausted." *Id.*

The following year, J.H. filed this lawsuit seeking an award of benefits for all outstanding claims for services provided in 2020 and remand of the claims for services provided in 2021.

6

Plaintiffs and Defendants have both filed cross-motions for summary judgment. Plaintiffs argue that United acted arbitrarily and capriciously in denying their claims and that the record clearly supports a finding that they are entitled to their claimed benefits. Defendants argue that United acted reasonably in denying the claims it denied based on the provisions and exclusions in the Plan documents and that it adequately communicated its reasoning to Plaintiffs in the appeal-decision letters.

## ANALYSIS

The Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1491, "was enacted to promote the interests of employees and their beneficiaries in employee benefit plans." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830 (2003). ERISA caselaw analogizes the administrator of an employee benefit plan "to the trustee of a common-law trust," meaning that the plan administrator acts as a fiduciary who "owes a special duty of loyalty to the plan beneficiaries." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008).

The statutory language, specifically § 1133, requires a plan administrator to follow specific procedures to deny a claim for benefits. *See generally David P. v. United Healthcare Ins. Co.*, 77 F.4th 1293, 1298–1301 (10th Cir. 2023) (explaining this process); *D.K. v. United Behavioral Health*, 67 F.4th 1224, 1235–36 (10th Cir. 2023) (same). First, the administrator must "provide adequate notice in writing . . . setting forth the specific reasons for [the] denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). The regulations further specify that the notice of the denial of benefits must contain, among other things, "[r]eference to the specific plan provisions on which the determination is based" and "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." 29 C.F.R. § 2560.503-1(g)(ii)–(iii).

Second, the administrator must "afford a reasonable opportunity . . . for a full and fair review . . . of the decision denying the claim." 29 U.S.C. § 1133(2). The regulations require that the administrative review procedures, among other things, "[p]rovide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim." 29 C.F.R. § 2560.503-1(h)(iv).

In essence, the statute and regulations "call[] for . . . a meaningful dialogue between ERISA plan administrators and their beneficiaries." *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 635 (10th Cir. 2003) (internal quotation marks omitted). "If benefits are denied, the reason for the denial must be stated in reasonably clear language; if the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it." *Id.* (cleaned up). Plan administrators fail to act as fiduciaries for the plan beneficiaries and preclude meaningful dialogue, for example, "where [they] have available sufficient information to assert a basis for denial of benefits, but choose to hold that basis in reserve rather than communicate it to the beneficiary." *Spradley v. Owens-Ill. Hourly Emps. Welfare Benefit Plan*, 686 F.3d 1135, 1140 (10th Cir. 2012). So, when reviewing an administrator's decision to deny benefits, "federal courts will consider only those rationales that were specifically articulated in the administrative record as the basis for denying [the] claim." *Id.* (internal quotation marks omitted).

In an ERISA case like this one, where both parties have moved for summary judgment, "the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor." *David P.*, 77 F.4th at 1308. The parties agree that the court should review the denial of Plaintiffs' benefits claims under the arbitrary-and-capricious standard because their Plan gave United "discretionary authority to . . . [i]nterpret Benefits and the other terms, limitations and exclusions" and "[m]ake factual

8

determinations relating to Benefits." ECF No. 31-5, at 9; *D.K.*, 67 F.4th at 1235. Under arbitrary-and-capricious review, the court asks "whether [United's] interpretation of the plan was reasonable and made in good faith and whether [its] benefits determination is predicated on a reasoned basis." *David P.*, 77 F.4th at 1308 (citation omitted) (internal quotation marks omitted).

Here, the record establishes that United's decision to deny benefits was arbitrary and capricious. United failed to engage in anything resembling a meaningful dialogue in explaining its decisions, and no reasonable beneficiary in J.H.'s shoes could have been expected to understand its reasoning or decision-making process from its appeal-decision letters.

Begin with the level one appeal. Responding to United's suggestion in the explanation-of-benefit letters it sent the parents that it had not received all the information it needed, the parents sent a level one appeal letter, attaching S.H.'s medical records up through December 31, 2020, and asking United to conduct a full and fair review.

United responded in a letter that inadequately explained why it upheld denial of benefits for some days but then overturned denial as to others. Technically, the letter did list the reasons for upholding denial by referencing the terms of the Plan, such as "The billed service is considered a non-covered service per the COMPLEMENTARY AND ALTERNATIVE MEDICINE (CAM) TREATMENTS FOR BEHAVIORAL AND SUBSTANCE USE DISORDERS" and "The medical documentation failed to include the [following] required elements when providing therapy services per the Therapy Services Documentation Requirements Reimbursement Policy . . . [:] Therapy Intervention Techniques [and] Patients progress." ECF No. 31-2, at 15–16.

But the letter provided the parents no practical way of knowing which reason applied to which claims—something they would have needed to know if they wanted to try to perfect their claims on second appeal. For example, the first reason listed above, the one invoking the CAM

Policy, applied to claims from "06/01/2020 through 12/31/2020," and the second reason, the one invoking the Therapy Policy, applied to claims from "06/03/2020 through 12/10/2020"—a largely identical window of time. *Id.* Further confusing matters, the letter explained that the documentation United received "did not include medical records for the[] date(s) of service" from "06/01/2020 through 12/31/2020"—the entire time frame at issue in the level one appeal. *Id.* at 16. So United received records showing that non-covered services were provided on some dates from June to December of 2020 but also apparently did not receive any medical records at all during that time window. What United meant to say, it seems, is that each stated reason applied to services provided on some of the dates in the specified time window, not necessarily all of them. But harmonizing the language of the decision letter in this way still does nothing to give the parents any clue as to which reason applied to which claims. Similarly, no reasonable person would have gleaned anything useful from the letter's conclusion sentence: "[C]overage is available under your benefit plan for your admission to Eva Carlston Academy for dates of service 06/01/2020 through 12/31/2020 and that coverage is not available for 06/02/2020 through 12/30/2020." *Id.*

Defendants resist this conclusion, arguing that the parents had the opportunity to contact United for clarification and that they could have easily reviewed their daughter's medical records themselves and figured out which reason was used to deny coverage for which dates. These arguments miss the mark by a mile.

As to the first, although it is true that the parents could have contacted United for clarification (and that they indeed did so by having their healthcare advocate call United to figure out which dates in the seven-month period were covered and which were not), it is irrelevant that they had this opportunity. The law required United to "provide adequate notice *in writing* . . . setting forth the specific reasons for [the] denial, *written* in a manner calculated to be

understood by the participant." 29 U.S.C. § 1133(1) (emphases added). That is, to satisfy its fiduciary obligations to the parents, the administrator had to put these details in the letter itself, which it did not do.[3] The second argument essentially tells the parents to pick up United's slack and do its work for it by poring through the record and figuring out why certain claims were denied—far from an easy task. Indulging the argument would turn ERISA's principles upside down.

      The score chart hardly improves for United when we turn to the level two appeal. As noted in the background section above, the parents' level two appeal letter noted several distinct concerns about the denial of their benefits claims. First, it observed that United's level one decision letter failed to specify which dates of service were found to be covered by the Plan and which were not. Second, the parents' letter expressed their interpretation that the Therapy and CAM Policies applied only to outpatient care and so should not have been applied to assess their claims for coverage of residential services. Third, their letter raised the possibility that United had engaged in prohibited unbundling by separating out covered services to avoid paying a per-diem benefit that would incidentally cover other non-covered services. If so, then United may have violated the Parity Act, so the parents requested that United conduct a parity analysis and provide them the results. Fourth, they pointed out that United had erroneously assumed that Eva Carlston was an in-network provider, an error that suggested United had been careless with its level one appeal. And

---

[3] Defendants attempt to remedy this obvious deficiency in the letter by listing in their opening brief the specific dates for which denial was overturned on the first appeal review. ECF No. 28, at 33–34. The court disregards this list because it was not contained in the appeal-decision letter itself. *See Spradley v. Owens-Ill. Hourly Emps. Welfare Benefit Plan*, 686 F.3d 1135, 1140 (10th Cir. 2012) ("[W]e will not permit ERISA claimants denied the timely and specific explanation to which the law entitles them to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation." (internal quotation marks omitted)).

fifth, they explained that the level one decision letter failed to specify what additional evidence they should submit to perfect their claims.

United's level two decision letter responded to the parents' first concern by listing the specific dates for which coverage decisions were either overturned or upheld, but it entirely ignored the other points the parents' letter advanced. For example, it said nothing about the Parity Act, and it did not clarify United's position on whether Eva Carlston was in network. The level two letter also unhelpfully noted that denial of coverage was upheld for 35 particular dates in 2020 because "[s]tart and stop times or total time of session for time-based codes" was "not documented." ECF No. 31-2, at 291. In saying so, the letter repeated without any justification or explanation the very error that the parents alleged United committed the first time—applying policies like the Therapy Policy to the claims for facility-based inpatient services. As the parents saw it, start and stop times, which are necessary to record for outpatient services covered by the Therapy Policy, were irrelevant to their claims concerning inpatient care that should have been reimbursed on a per-diem basis under the Facility Policy regardless of how long a particular activity or service lasted during the day. United took no effort to explain how it understood the interaction between the Facility Policy and the Therapy Policy (or the CAM Policy, for that matter) and thereby respond to the parents' concern that the policies were being misapplied.

The level two letter also contained a glaring internal inconsistency regarding coverage for some of the dates in March 2021. It stated that "[t]he denial ha[d] been overturned for . . . the dates of service 03/01/2021, 03/02/2021, [and] 03/04/2021" on the basis that "[t]he Documentation support[ed] the service billed" before saying that "[t]he denial [wa]s upheld for . . . the dates of service 01/01/2021-03/03/2021" because supporting documentation was not submitted for those

days. *Id.* No wonder then the parents were confused as to the basis on which denial was overturned for March 1, 2, and 4.[4]

These deficiencies in United's appeal-decision letters lead the court to conclude that United has failed to fulfill its responsibility to engage in meaningful dialogue with the parents. It was required to give the parents notice calculated to help them understand why their claims were denied, and it failed to do so in either of its decision letters. It repeatedly ignored their concerns and left them to figure out for themselves how the different policies applied to their claims and why United had upheld the denial of certain claims. Based on the dearth of reasoning in the appeal-decision letters, plus the internal inconsistencies and erroneous assumptions contained in them, the court determines that United's decision-making was arbitrary and capricious.

As remedy, Plaintiffs request the court to award them benefits outright for all claims from 2020 that United denied and to remand the claims from 2021 to United. The appeal of Plaintiffs' proposal as to the claims from 2020 is that it would incentivize United to engage properly and thoroughly with benefits claimants each time during every internal appeals process moving forward. Remanding the claims to United, on the other hand, would incentivize it to expend minimal resources in issuing thinly reasoned decision letters during the internal appeals process, knowing that if a court finds against it on arbitrary-and-capricious review, it will have another

---

[4] In its briefing, United "acknowledges that it [overturned the denial of coverage on March 1, 2, and 4] in error." ECF No. 45, at 20. United's letter, however, said nothing about error, and the court may not entertain this explanation, which United presented for the first time before this court. Even if the court does consider it, it only leads the court to wonder, if that denial of coverage was overturned in error, which denials of coverage were upheld in error? Ultimately, the lack of meaningful explanation in United's letters combined with this error underscore the "capricious"— that is, unpredictable—nature of its coverage decisions.

chance to get it right. Remand may seem especially unfair because benefits claimants generally do not get the same leeway when they make mistakes.

Nevertheless, the Tenth Circuit has held that "[g]enerally, remand is appropriate if the administrator . . . failed to adequately explain the grounds for the decision." *David P.*, 77 F.4th at 1315 (cleaned up). "[Only] if the evidence in the record clearly shows that the claimant is entitled to benefits[ is] an order awarding such benefits . . . appropriate." *Id.* (internal quotation marks omitted). From the record here, the court is hesitant to say that Plaintiffs are clearly entitled to benefits for all their claims in 2020 for a couple reasons. First, contrary to Plaintiffs' suggestions, the court cannot locate any language in the CAM or Therapy Policies limiting the application of those policies to outpatient care. So United may well be correct that Plaintiffs' claims should be governed by the CAM and Therapy Policies in addition to the Facility Policy. Second, if the CAM and Therapy Policies do apply to Plaintiffs' claims, then United may have correctly denied coverage for at least some days of service. Take June 2, 2020, for example—a day for which the denial of coverage was upheld even after the second appeal. The medical records suggest that S.H. received only group art therapy on that day, ECF No. 31-1, at 566, and art therapy is clearly excluded from coverage under the CAM Policy, *id.* at 144.

The problem is, United did not explain in its level one decision letter why it denied benefits on that day, and its level two decision letter said that the denial was based on the lack of "[s]tart and stop times or total time of session," not on the exclusion of art therapy. ECF No. 31-2, at 291. But it is not obvious that start and stop times are relevant to Plaintiffs' claims, which would seem more naturally covered on a per-diem basis given S.H.'s residential treatment setting. And whereas the level one appeal letter broadly invoked the CAM Policy exclusions, the level two letter abandoned that rationale. *See* ECF No. 31-2, at 15–16, 290–91. Ultimately, United's error was that

"in denying Plaintiffs benefits, . . . [it] failed to explain adequately why it denied Plaintiffs' claims[] and failed to engage adequately with Plaintiffs." *David P.*, 77 F.4th at 1315. So, "the most appropriate remedy is to remand Plaintiffs' claims to [United] for its further, and proper, consideration." *Id.*

On remand, Plaintiffs shall have another chance to express their concerns, explain their interpretation of the Plan documents, and challenge the denial of their benefits claims from 2020. United must respond adequately and thoroughly to Plaintiffs' concerns and arguments. If United fails to do so yet again, Plaintiffs may return to court, and the court may grant all unpaid claims for benefits from 2020 outright as a sanction for failure to follow the court's instructions. Two more points: First, remand "does not provide [United] the opportunity to reevaluate a claim based on a rationale not raised in the administrative record and not previously conveyed to Plaintiffs." *Id.* at 1316. That means that United must expand on the reasons contained in its two appeal-decision letters (while responding to Plaintiffs' concerns and arguments) without introducing new reasons. Second, during oral argument, Plaintiffs' counsel invoked an ordinary standard of care (or industry standard) in reviewing benefits claims. To the extent industry standards are relevant, the parties on remand should develop evidence about those standards and ensure that the evidence is included in the administrative record.

As to the claims from 2021, United argues that Plaintiffs have failed to exhaust their administrative remedies because they neglected to submit documentation to support those claims. United observes that Plaintiffs' Plan requires them to "submit a request for payment of Benefits within 90 days after the date of loss" and that if they fail to do so, "Benefits for that health care service will be denied or reduced, as determined by [United]." ECF No. 31-5, at 45. Plaintiffs argue that they submitted a request for payment and put United on notice that they wished to appeal

the denial of their claims from 2021 by including the following language in their level one appeal letter: "[W]e are appealing June 1, 2020, through her future date of discharge." ECF No. 31-1, at 302. In their view, if United needed additional records supporting their request for payment, it should have requested S.H.'s medical records from 2021, which it did not do, and remand is appropriate to allow Plaintiffs a chance to submit the documentation and United a chance to review those claims.

The court agrees that United was on notice of Plaintiffs' claims from 2021 and that United should have asked for further documentation. Although full medical records for 2021 were not submitted, United had received UB-04 forms documenting that S.H. received services from January 1 to March 4, 2021. ECF No. 31-1, at 121–25. As a fiduciary for the parents, then, United should have requested any documents it needed to assess whether the services S.H. received during that time were covered by the parents' Plan. *See D.K.*, 67 F.4th at 1240 ("[I]f the plan administrators believe more information is needed to make a reasoned decision, they must ask for it." (internal quotation marks omitted)). United claims that it did request medical records from Eva Carlston but never received any. Perhaps that is true, in which case United should have requested that the parents submit the records directly. And from the parents' perspective, it well may have appeared that Eva Carlston had already submitted the records to United. After all, United's level two appeal-decision letter stated that denial of benefits was overturned for three days in March 2021 because "[t]he Documentation support[ed] the service billed." ECF No. 31-2, at 291. Remand is therefore appropriate for the claims from 2021 as well.

## CONCLUSION AND ORDER

For the reasons above, the court **GRANTS** Plaintiffs' motion for summary judgment, **DENIES** Defendants' motion for summary judgment, and **ORDERS** that Plaintiffs' claims be

remanded to United. Should Plaintiffs seek further review of their claims, they are **ORDERED** to submit their remand appeal letter to United within **30 days** from the issuance of this decision, and United is **ORDERED** to respond in a final appeal-decision letter within **30 days** of the date Plaintiffs submit their remand appeal letter. Should United once again fail to engage in meaningful dialogue with Plaintiffs, Plaintiffs may return to court, and the court will award all outstanding benefits claims as a sanction for failing to comply with the court's order.

Signed June 16, 2025.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge